WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Grabowski,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. CV-19-00460-TUC-SHR<br><br>**Order Re: Motion for Judgment on the Pleadings** |

Pending before the Court is Defendants Arizona Board of Regents and University of Arizona's ("University Defendants") Motion for Judgment on the Pleadings on Retaliation ("Motion"). (Doc. 34.) Plaintiff Michael Grabowski filed a response in opposition (Doc. 38) and University Defendants filed a reply. (Doc. 39.) After Grabowski was removed from the University of Arizona's Cross-Country/Track & Field Team ("Team"), he filed this lawsuit and pleaded several claims against multiple defendants. This Court previously dismissed several of his claims (Doc. 31); Plaintiff's only remaining claim at this stage is a Title IX retaliation claim, alleging University Defendants retaliated against him for making complaints about "sexual bullying and slurs directed against him." (Doc. 38 at 1.) For the following reasons, the Court grants the Motion.

### I. BACKGROUND

The following facts are derived from Plaintiff's Third Amended Complaint ("TAC") and are assumed to be true for purposes of deciding the Motion. *See Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

In August 2017, Plaintiff enrolled at the University of Arizona ("UA") as a freshman on an educational and athletic scholarship as distance runner for the Team. (Doc. 26 ¶ 17.) Almost immediately upon joining the Team, Plaintiff was subjected to bullying from Team members. (*Id.* ¶¶ 21-23, 25.) Team members called Plaintiff names such as "gay," "homosexual," and "fag." (*Id.*)

On August 28, 2017, Plaintiff's father called Team coach James Li and told him Plaintiff had been subjected to bullying. (Doc. 26 ¶¶ 29-31.) Coach Li promised he would look into the matter and he talked to Plaintiff within one week of the call. (*Id.*) On October 4, 2017, Plaintiff's mother emailed the Team's sports psychologist, Dr. Amy Athey, and asked her to talk to Plaintiff about the bullying. (*Id.* ¶ 32.) According to Plaintiff, "[b]y this time, the Defendant University of Arizona, and particularly . . . Coaches Li and Harvey had personal knowledge of" the bullying at issue in this case. (*Id.* ¶ 33.) In late October 2017, Team members created "a harassing, homophobic, obscene video about Plaintiff" at "a University of Arizona party" and posted the video on the Team's public chat group and on the internet. (*Id.* ¶ 36.) At a Halloween party soon after, Plaintiff complained to Coach Harvey, but Harvey did not respond. (*Id.* ¶ 40.)

In January 2018, Plaintiff met with Dr. Athey and her associate Michelle Johnson-Skog and reported "aggressive bullying" occurring "almost daily." (*Id.* ¶ 42.) Plaintiff's mother also spoke to Athey and Johnson-Skog about the bullying in January and sent Athey an email expressing concern about "Plaintiff's increasing sadness." (*Id.* ¶¶ 47-48.) That same month, Plaintiff's father called Coach Li to report "little had changed since [their] first phone conversation," and Coach Li again promised to speak to Plaintiff about the bullying. (*Id.* ¶¶ 44-46.)

On August 24, 2018, Plaintiff met with Coach Li and the new assistant coach, Hannah Peterson. (*Id.* ¶¶ 50-51.) Coach Li asked Plaintiff, "as if he had no advance reporting of it, if there had been any bullying 'going on.'" (*Id.* ¶ 51.) Plaintiff specifically named students on the Team who had bullied him and claimed they had bullied other Teammates too. (*Id.* ¶ 52.) Coach Li replied, "You can't single out the two top runners

on the team." (*Id.*)  After this meeting, Plaintiff noticed "a concerted effort among the coaches to demoralize him." (*Id.* ¶ 53.)

On September 10, 2018, Plaintiff spelled out the word "R-A-P-E" at a Team practice while discussing a woman's right to say no to sex.  (Doc. 26 ¶¶ 80-81.)  Two days later, Plaintiff was dismissed from the Team.  (*Id.* ¶¶ 57-68.)  Coach Harvey told Plaintiff, "There's a certain atmosphere we are trying to establish on this team, and you do not fit in it."  (*Id.* ¶ 64.)  He also said Plaintiff's name "kept coming up," and Plaintiff had been accused of "a string of things" by other Teammates.  (*Id.*)  On September 14, 2018, Plaintiff and his parents spoke to associate athletic director James Francis at a Team event about Plaintiff's dismissal from the Team.  (*Id.* ¶¶ 70-71.)  Francis said "Plaintiff's 'name' kept coming up and he was being accused by athletes of a 'string of things,'" including an incident where Plaintiff had allegedly sexually harassed a female student who later transferred out of the UA.  (*Id.* ¶¶ 71-72.)  On September 27, 2018, a meeting was arranged for Plaintiff and his parents to ask questions about Plaintiff's removal from the Team.  (*Id.* ¶¶ 89-91.)  Coach Harvey denied any knowledge of the alleged bullying against Plaintiff.  (*Id.* ¶ 98.)  Instead, Coaches Harvey and Li recounted the incidents which they claimed led to Plaintiff's dismissal: a report that Plaintiff was the perpetrator of a "racial incident" on the team, and that Plaintiff was overheard "joking" about rape with female Teammates, which then led to an "official Title IX Complaint" lodged against him.  (*Id.* ¶¶ 79-81, 87, 89-95.)  Plaintiff denied involvement in both incidents.  (*Id.* ¶¶ 79, 82, 96.)

After Defendants filed a motion to dismiss the TAC (Doc. 27), the Court dismissed various counts and defendants.  (Doc. 31 at 13-14.)  In so doing, the Court noted: "Plaintiff has failed to state a claim for sexual harassment under Title IX because the allegations in the TAC do not show discrimination 'on the basis of sex.'"  (Doc. 31 at 7.)  The Court nonetheless examined the Title IX elements and concluded, even if this could fall "on the basis of sex," the claim fails because the alleged harassment cannot be deemed severe and pervasive—an element essential to a Title IX sexual discrimination claim.  (Doc. 31 at 7-8.)  The only count that remained after the motion to dismiss was Plaintiff's Title IX

retaliation claim encompassed in Count I against University Defendants. (Doc. 31 at 13-14.)

Two months later, University Defendants moved for judgment on the pleadings, explaining they had not fully briefed Plaintiff's retaliation claim in their motion to dismiss because they believed "Plaintiff deleted his Title IX retaliation claim from the TAC." (Doc. 34 n.1.) University Defendants argue Plaintiff has not alleged facts to establish a prima facie case of retaliation because Plaintiff's complaints of bullying are not protected activity and there is an insufficient causal link to establish such a claim. (Doc. 34 at 2-3.) Plaintiff asserts he persistently engaged in a protected activity by complaining about sexual harassment, the University Defendants retaliated against him by removing him from the Team, and the retaliation "was sufficiently close in time and circumstances" to the complaints. (Doc. 38 at 1-5, 7.)

## II. STANDARD FOR JUDGMENT ON PLEADINGS

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo*, 179 F.3d at 699. "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). Therefore, a motion for judgment on the pleadings must be granted if the complaint lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

## III. DISCUSSION

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). To succeed on a Title IX claim, a plaintiff must prove: (1) the

1  defendant is a Title IX funding recipient; (2) the school knows of harassment in its
2  programs or activities; (3) the school was deliberately indifferent to the harassment and the
3  harasser is under its programs or activities; and (4) the "harassment . . . is so severe,
4  pervasive, and objectively offensive that it can be said to deprive the victim[] of access to
5  the educational opportunities or benefits provided by the school." *Davis v. Monroe Cnty.*
6  *Bd. of. Educ.*, 526 U.S. 629, 650 (1999).

7        To establish a prima facie claim of Title IX retaliation, a plaintiff must allege (1) he
8  participated in a protected activity, (2) he suffered an adverse action, and (3) establish a
9  causal link between the protected activity and the adverse action. *Emeldi v. Univ. of*
10  *Oregon*, 698 F.3d 715, 724 (9th Cir. 2012).  The framework for Title VII cases generally
11  governs Title IX retaliation claims, *id.* at 725, and the burden for establishing a prima facie
12  case of retaliation is low.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843,
13  867 (9th Cir. 2014) ("Only a minimal threshold showing of retaliation is required.")
14  (internal quotation omitted).  However, a district court can dismiss a Title IX retaliation
15  claim if a plaintiff fails to allege sufficient factual allegations in his complaint to establish
16  a retaliation claim.  *Tanjaya v. Regents of Univ. of California*, 830 F. App'x 526, 527 (9th
17  Cir. 2020) (affirming dismissal of Title IX retaliation claim that did not allege sufficient
18  facts to establish university retaliated); *see Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d
19  9, 36-38 (D.D.C. 2018) (dismissing Title IX retaliation claim because insufficient factual
20  allegations in complaint to establish an element of retaliation).

21        Opposition to Title IX conduct may qualify as a protected activity if the complainant
22  acted with "a good faith, objectively reasonable belief that the [conduct] was unlawful."
23  *See Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 686 (11th Cir. 2019)
24  (applying Title VII retaliation framework in Title IX case); *Cf. Little v. Windermere*
25  *Relocation, Inc.*, 301 F.3d 958, 964 (9th Cir. 2002) (Title VII retaliation case explaining
26  opposition is protected activity when based on reasonable belief employer engaged in
27  unlawful employment practice); *Barker v. Missouri Dep't. of Corr.*, 513 F.3d 831, 834 (8th
28  Cir. 2008) (plaintiff must allege facts supporting she had objectively reasonable belief

conduct at issue constituted sexual harassment under Title VII). To determine whether something is objectively reasonable, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [an individual's] performance." *See Kocsis*, 788 F. App'x at 686 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *Cf. Little*, 301 F.3d at 964 (same in Title VII context); *Anderson v. Fam. Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (same in Title VII context).

In his TAC, Plaintiff alleges he and his parents had reported to Coach Li, Dr. Athey, and Johnson-Skog that Team members were sexually harassing him by calling him "homosexual," "gay," and "a fag." (Doc. 26. ¶¶ 23, 25, 29-34, 44-45, 47, 52.) Plaintiff alleges this name-calling happened on an almost a daily basis and that University Defendants and Coach Harvey had personal knowledge of the bullying by October 2017.[1] (Doc. 26 ¶¶ 23, 33.) According to Plaintiff, the harassment was based on his perceived sexual orientation. (Doc. 26 ¶ 113.)

After reviewing the pleadings and taking all allegations in Plaintiff's pleadings as true, *see Fajardo*, 179 F.3d at 699, the Court concludes Plaintiff has failed to allege sufficient facts showing he engaged in a protected activity. No Supreme Court or Ninth Circuit case has expressly held discrimination based on perceived sexual orientation is actionable under Title IX and neither party cites any caselaw regarding this matter. Nevertheless, even if the Court assumes, for the sake of argument, that perceived sexual orientation claims are entitled to protection under Title IX, Plaintiff's claim still fails. As discussed in this Court's previous Order (Doc. 31), the behavior Plaintiff complains of— while offensive and inappropriate—does not constitute harassment sufficiently severe enough to create an abusive educational environment actionable under Title IX. *See Davis*, 526 U.S. at 652 ("Damages are not available for simple acts of teasing and name-calling

---

[1] Plaintiff also alleges Team members posted a "homophobic obscene video" about him to the Team's public chat group and then the internet. However, he does not provide any specific information about what was in the video, nor whether the video was viewed by any of his coaches or University Defendants. (Doc. 26. ¶¶ 36-40.)

- 6 -

1 among school children, however, even where these comments target differences in gender."); *see also Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1027 (E.D. Cal. 2009) (insults such as "fag" or "homo" are not sufficient without more to establish discrimination); *Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 166 (5th Cir. 2011) (rejecting Title IX student-on-student harassment claim where alleged conduct was only name calling). No matter how sincerely he or his parents might have subjectively believed he was receiving discriminatory treatment actionable under Title IX, their belief was not *objectively* reasonable. *See Kocsis*, 788 F. App'x at 686; *Little*, 301 F.3d at 964. No reasonable person in Plaintiff's position would believe the name calling in this case was actionable under Title IX because of the lack of severity of his allegations.

In his TAC, Plaintiff alleges in a conclusory fashion that he "was discriminated against and his educational opportunities at the [UA] were significantly disrupted by the sexual and homophobic rants and subsequent discrimination by his teammates." (Doc. 26 ¶ 108.) However, he makes no specific allegations as to how that is so. He does not allege facts to support his mental health or academic performance were severely affected by the name-calling. In fact, he appears to allege his grades at school and his relationships with students not on the Team "were always exemplary." (Doc. 26 ¶ 26.) He also does not allege his athletic performance on the Team suffered due to the bullying. (Doc. 26 ¶¶ 7-121.)

In his response to the instant Motion, Plaintiff argues he alleged in his TAC that "at one point [he] was so physically ill from the bullying that he threw up." (Doc. 38 n.2.) However, Plaintiff did not allege in his TAC that the bullying caused his illness; rather, he alleged he vomited twice during a race and was diagnosed with a viral illness. (Doc. 26 ¶¶ 54, 56.) Nonetheless, even if he had alleged the bullying caused his illness, it would have been an isolated incident. *See Mosavi v. Mt. San Antonio Coll.*, 805 F. App'x 502, 504 (9th Cir. 2020) (isolated incident not sufficient to constitute severe and pervasive harassment under Title IX); *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th

Cir. 2003) (to be severe, student-on-student harassment must be more widespread than a single instance of one-on-one peer harassment).  Plaintiff does not make any other allegations specifying how he was deprived of educational opportunities or activities. Because Plaintiff has not alleged enough facts to show he had an objectively reasonable belief the conduct he complained of was unlawful, he has not shown he engaged in a protected activity.  Therefore, Plaintiff has failed to allege enough to establish a prima facie case of Title IX retaliation and the Court will dismiss that claim.[2]

**IV. LEAVE TO AMEND COMPLAINT**

A court granting judgment on the pleadings pursuant to Rule 12(c) should grant leave to amend even if no request for leave to amend has been made unless it is clear amendment would be futile. *Pac. W. Grp., Inc. v. Real Time Solutions, Inc.,* 321 F. App'x 566, 569 (9th Cir. 2008) (mem.); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can justify the denial of a motion to amend.").  "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

Here, Plaintiff did not request leave to amend his TAC in his Motion (Doc. 38) and the Court finds amendment would be futile.  Plaintiff has been given numerous opportunities to amend claims in his complaint and has repeatedly failed to remedy the deficiencies.  Specifically, Plaintiff has repeatedly failed to allege facts sufficient to establish he had an objectively reasonable belief the bullying he experienced was actionable under Title IX.  As mentioned above, Plaintiff did not allege any specific severe detrimental impact to his academic, athletic, or mental health because of the bullying. Allowing Plaintiff to amend his complaint and file a fifth complaint would not be in the interest of justice.

Accordingly,

---

[2] The Court will not address University Defendants' argument that there was insufficient causation because it has found there was no protected activity.

- 8 -

**IT IS ORDERED:**

1. The University Defendant's Motion for Judgment on the Pleadings (Doc. 34) is **GRANTED** and this case is dismissed with prejudice.
2. The Clerk of Court shall enter judgment in favor of University Defendants and close this case.

Dated this 13th day of April, 2022.

Honorable Scott H. Rash
United States District Judge

- 9 -