1
2
3
4
5
6              **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9   Michael Grabowski,                    | No. CV-19-00460-TUC-SHR

10                      Plaintiff,         | **Order Granting Defendants' Motion
11  v.                                     | for Partial Summary Judgment Re:
                                           | Title IX Discrimination Claim**
12  Arizona Board of Regents, et al.,

13                      Defendants.

14

15

16         Pending before the Court is a "Motion for Partial Summary Judgment on Plaintiff's

17  Discrimination Claim" (Doc. 69), filed by the Arizona Board of Regents for and on behalf

18  of the University of Arizona (collectively, "Defendants").[1]  The Motion is fully briefed.

19  (Docs. 69, 76, 80.)  For the following reasons, the Court grants the Motion.

20  **I.    Background[2]**

21         a.  <u>Procedural History</u>

22         On April 15, 2022, this Court granted Defendants' Motion for Judgment on the

23  Pleadings and dismissed Plaintiff's Third Amended Complaint with prejudice and without

24  leave to amend.  (Doc. 40.)  Soon after, Plaintiff appealed this ruling to the Ninth Circuit

25  Court of Appeals.  (Doc. 42.)  On July 5, 2023, the Ninth Circuit affirmed in part, vacated

26

27         [1] The Court denies Defendants' request for oral argument because it will not aid in
    resolution of the issues raised.  *See* LRCiv 7.2(f); Fed. R. Civ. P. 78; *Partridge v. Reich*,
28  141 F.3d 920, 926 (9th Cir. 1998).
           [2] The parties are familiar with the factual background.  Therefore, the Court will
    only provide the procedural and factual history relevant to the instant motion.

in part, and reversed in part this Court's dismissal, remanding for further proceedings. (*See generally* Doc. 45-1.) Regarding Plaintiff's discrimination claim, the Ninth Circuit held Plaintiff had sufficiently alleged the first, third, and fourth elements required to establish a Title IX claim based on student-on-student harassment but failed to sufficiently allege the second element—deprivation of an educational opportunity. (Doc. 45-1 at 17–21.) During oral argument before the Ninth Circuit, when asked what facts support this element, Plaintiff's lawyer "asserted for the first time that he knew of additional facts that Plaintiff could add to support his claim." (*Id.* at 20.) Specifically, Plaintiff's counsel stated Plaintiff had to leave the University of Arizona "as soon as the semester was over" due to the loss of his athletic scholarship, after which Plaintiff obtained another athletic scholarship at a different university. (*Id.* at 20 n.4.) "Because these facts, if pleaded, might aid Plaintiff," the Ninth Circuit vacated the portion of this Court's prior order denying leave to amend the discrimination claim. (*Id.* at 20.)

After Plaintiff's appeal before the Ninth Circuit concluded, Plaintiff filed a "Motion to Approve Filing of Fourth Amended Complaint" (Doc. 46) in this Court. The Court granted this motion over Defendants' objection. (Docs. 49, 51.) After Plaintiff filed his Fourth Amended Complaint (Doc. 52) and Defendants answered (Doc. 55), the parties filed a Rule 26(f) report in which they stipulated to expedited discovery on "(1) when Plaintiff's athletic scholarship was cancelled and (2) when he left the University." (Doc. 59 at 4.) The parties indicated the expedited discovery would "be followed by a Motion for Partial Summary Judgment on the discrimination claim, prior to commencement of depositions." (*Id.*) Following this initial period of expedited discovery, Defendants filed the instant Motion. (Doc. 69.)

b. Factual Background[3]

In Fall 2017, Plaintiff "began his freshman year as a student at the University of

_____

[3] Plaintiff states he does not dispute paragraphs 1–15 of Defendant's Statement of Facts (Doc. 70). (*See* Doc. 77 ("PSOF") at 2.) Plaintiff, however, does not explicitly state a position on paragraphs 16–31 of Defendant's Statement of Facts. Accordingly, the Court will generally treat the facts in paragraphs 1–31 of Defendant's Statement of Facts as

Arizona ("UA") and a member of the UA Men's Track and Field team."  (Doc. 70 ("DSOF") ¶ 1.)

During his freshman year (2017–2018), Plaintiff, as a non-resident of Arizona, owed $17,145 per semester in tuition.  (DSOF ¶ 2.)  The UA awarded Plaintiff the Red and Blue Excellence Award Scholarship ($2,500/semester) and the Arizona Excellence Tuition Scholarship ($7,000/semester), both of which were exclusive to out-of-state students and unrelated to Plaintiff's membership on the track team.  (*Id.* ¶¶ 2–3.)  Plaintiff was offered a scholarship for the "provision of course related books and materials" in connection with his membership on the track team ("Athletic Books Scholarship").  (*Id.* ¶¶ 4, 6.)  However, he declined this scholarship, instead accepting a $6,000 academic Achievement Award ($3,000/semester).  (*Id.* ¶ 8.)  Plaintiff's cumulative GPA at the end of his freshman year was 3.25.  (*Id.* ¶ 9.)  After his freshman year ended but before his sophomore year began, Plaintiff became an Arizona resident.  (*Id.* ¶ 10.)

During his sophomore year (2018–2019), Plaintiff, now a state resident, owed $5,430 per semester in tuition.  (DSOF ¶¶ 10–11.)  Although Plaintiff was no longer eligible for the Red and Blue Excellence Award and Arizona Excellence Tuition Scholarships, he was awarded the Wildcat Excellence Tuition Scholarship ($4,000/semester), an academic scholarship unrelated to his membership on the track team and available to in-state students.  (*Id.* ¶¶ 12–13.)  This scholarship required Plaintiff to maintain a cumulative GPA of 3.0.  (*Id.* ¶ 13; *see also* Doc. 77 ("PSOF") at 2 ("Plaintiff does not dispute the allegations made in [¶ 13]."); Doc. 76-1 at 10.)  On September 12, 2018, Plaintiff was removed from the Men's Track and Field Team but still retained certain athletic benefits, including the Athletic Books Scholarship, which he was permitted to use

---

undisputed unless Plaintiff otherwise indicates a dispute.  *See* Fed. R. Civ. P. 56(e)(2)–(3).
    The Court admonishes Plaintiff's counsel for filing a profoundly deficient statement of facts.  *See* LRCiv 56.1(b).  While the first page of Plaintiff's Statement of Facts states "[a]ttached hereto are Exhibits Supporting Plaintiff's claims," no exhibits were attached to the filing.  (PSOF at 1.)  Instead, these exhibits appear to be attached to Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment.  (*See* Docs. 76-1, 76-2.)  And Plaintiff's Statement of Facts only contains one citation to Exhibit 1.  (PSOF at 2.)

and did, in fact, use during both semesters of his sophomore year despite his removal from the track team. (DSOF ¶¶ 14–16.) Plaintiff also retained academic support benefits and access to the training room. (*Id.* ¶ 16.) Plaintiff completed his sophomore year at UA with a cumulative GPA of 3.571. (*Id.* ¶ 18.)

Fall 2019 was Plaintiff's last semester as a UA student. (*See* DSOF ¶¶ 19, 22, 24.) This was his junior year, and he continued to receive the Wildcat Excellence Tuition Scholarship ($4,000/semester). (*Id.* ¶ 19.) On October 4, 2019, Plaintiff notified the University of his intent to transfer to another university using a Notice of Transfer form. (*Id.* ¶ 22.) This form warned "as a result of submitting this form, my athletics aid may be reduced, canceled or not renewed." (*Id.*) After submitting this form, Plaintiff "retained his Athletic[] Books Scholarship, all C.A.T.S. Academics support services, Athletics medical services and priority registration" but did not retain other athletic team benefits, including "athletics apparel, equipment and facilities access, Bear Down Kitchen access unless he needed to continue that for medical reasons, and complimentary tickets to athletic events." (*Id.* ¶ 23.) Plaintiff completed his final semester at UA with a cumulative GPA of 3.423. (*Id.* ¶ 29.)

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Anderson*, 477 U.S. at 255. When the non-movant bears the burden of proof on a claim at trial, the movant may prevail either by citing evidence negating an essential element of the non-movant's claim or by showing the non-movant's proffered evidence is insufficient to establish an essential element of the non-movant's claim. *See Celotex*, 477 U.S. at 322–23; 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. 2022).

## III. Discussion

### a. Judicial Estoppel

Defendant asserts the "newly contrived allegations in the [Fourth Amended Complaint] are barred by judicial estoppel." (Doc. 69 at 12.) Plaintiff disagrees, asserting the "[c]oncepts of res judicata are not applicable in this case," and "[t]here are no cases that support the [University's] argument regarding res judicata." (Doc. 76 at 8.)

A court can invoke judicial estoppel, an equitable doctrine, "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted); *see also Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270–71 (9th Cir. 2013). Generally, though not exhaustively, three considerations inform the Court's use of judicial estoppel—(1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) "whether the party has succeeded in persuading a court to accept that party's earlier position," and (3) whether the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51.

The Court will invoke judicial estoppel to prevent Plaintiff's claims from going forward insofar as those claims conflict with assertions made at oral argument before the

Ninth Circuit.  At oral argument, Plaintiff's counsel stated: "Plaintiff had to leave the University of Arizona '*as soon as the semester was over*' due to the loss of his athletic scholarship, after which Plaintiff obtained another athletic scholarship at a different university." (Doc. 45-1 at 20 n.4 (emphasis added).)  This statement suggests Plaintiff's athletic scholarship was revoked the same semester he was removed from the track team, and he was immediately forced to leave UA by the end of the Fall 2018 semester.

In his Fourth Amended Complaint, Plaintiff leaves out much of the specificity he asserted with force at oral argument.  He alleges "[h]e was denied an $8,000 grant/scholarship because his grades slipped below the minimum [required GPA *once the effects of the harassment and retaliation were known to* [*him*]." (Doc. 52 ¶ 26 (emphasis added).)  He alleges, due to "the hostile environment at [UA], caused by the harassment by student athletes, lack of response by the institutional defendants and the retaliation and further harassment by being excluded from the team, [Plaintiff] was denied his scholarship and other benefits." (*Id.*)  He alleges "[a]s a result of the loss of his scholarship, he was forced to transfer to another college and to retake numerous classes." (*Id.*)  Yet none of these allegations are couched in the timeframe Plaintiff's counsel so definitively asserted at oral argument before the Ninth Circuit.  And, Plaintiff fails to include any allegation he lost an *athletic* scholarship, instead stating he lost an unnamed $8,000 grant/scholarship without noting the nature of the scholarship.  The Court finds Plaintiff's failure to include timeframe-specific and scholarship-characterizing language in his Fourth Amended Complaint clearly inconsistent with his time-bounded and athletic-scholarship-specific assertions at oral argument before the Ninth Circuit.[4]  Additionally, as described below, the parties' subsequent discovery reveals  Plaintiff's assertions before the Ninth Circuit are baseless.

Next, the Court finds Plaintiff would derive an unfair advantage by proceeding on the facts alleged in his amended complaint related to the loss of his scholarship and forcible

---

[4] Defendants also contend Plaintiff's new allegations about exclusion from group meetings by student athletes and being denied access to special tutoring for athletes are inconsistent with what was identified by counsel at oral argument.  The Court disagrees and applies judicial estoppel only with respect to Plaintiff's scholarship loss.

transfer where the opportunity to amend resulted from Plaintiff's counsel misconstruing and unfairly characterizing facts ultimately never alleged on remand.  If Plaintiff were allowed to proceed, Defendants would be prejudiced because they would be forced to litigate a dubious discrimination claim when the Ninth Circuit only granted leave to amend based on "new facts" that were not asserted and most likely could never have been asserted before this Court.  In the absence of any attempt by Plaintiff to justify these statements in response to Defendants' Motion, the Court can only presume Plaintiff's counsel made these representations to the Ninth Circuit with knowledge they were not true[5] or at the very least with reckless disregard as to their truth.  *See* LRCiv 7.2(i) (noting failure to respond may be deemed consent to granting of the motion).  Considering counsel's flagrant ignorance of the facts and failure to respond to this aspect of Defendants' Motion, the Court invokes judicial estoppel to prevent Plaintiff from unfairly benefitting from his misrepresentations to the Ninth Circuit.

b. Merits: Educational Opportunity Element of Title IX Claim

Even if the Court were not inclined to invoke the equitable doctrine of judicial estoppel, it would still grant Defendants' Motion on its merits because there is no genuine dispute of material fact, and they are entitled to judgment as a matter of law on an essential element of Plaintiff's discrimination claim.  To resolve this Motion, the Court need only focus on the narrow issue of whether there is any genuine issue of material fact Plaintiff was deprived of an educational opportunity because of discrimination and, if not, whether Defendants are entitled to judgment as a matter of law on Plaintiff's Title IX claim.  *See Celotex*, 477 U.S. at 322–23.

To prove his Title IX discrimination claim against Defendants, Plaintiff must show he suffered sex-based harassment "so severe, pervasive, and objectively offensive" that it

---

[5] Notably, Plaintiff's counsel could not truthfully maintain Plaintiff had to leave "as soon as the [Fall 2018] semester was over" before the Ninth Circuit without admitting he violated Federal Rule of Civil Procedure 11 when filing the first two complaints in this case. (*See* Doc. 1 at 1 (stating Plaintiff "*is*, and has been, since August 14, 2017, a student at the University of Arizona" (emphasis added)); Doc. 7 at 2 (same).)  As to the appropriate sanction for the misrepresentations to the Ninth Circuit, such is left to the discretion of that Court.

deprived him of "educational opportunities or benefits provided by the school." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000). "[O]vert, physical deprivation of access to school resources" counts as a deprivation of an educational opportunity. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650–51 (1999). Additionally, conduct that "undermines and detracts from the victims' educational experience," such that "the victim-students are effectively denied equal access to an institution's resources and opportunities," is also actionable under Title IX. *Id.* at 651. However, a plaintiff must show more than "[a] simple decline in grades." *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1120 (9th Cir. 2023). Instead, the plaintiff must show a "decline in grades, paired with "persisten[t] and sever[e]" harassment." *Id.* (quoting *Davis*, 526 U.S. at 652) (alterations in original).

When determining Plaintiff failed to allege deprivation of an educational opportunity on appeal, the Ninth Circuit noted Plaintiff's "allegations fail to provide a 'potential link' between the quality of Plaintiff's education and the alleged harassment." *Id.* Even considering Plaintiff's new allegations and evidence in connection with his Fourth Amended Complaint, Defendants assert Plaintiff was not deprived of any educational opportunity. (Doc. 69 at 11.)

As a threshold matter, Plaintiff fails to link his single-semester GPA decline (Fall 2019) with any student-on-student harassment or actions by UA officials.[6] Plaintiff seems to argue he experienced "emotional" and "educational" impacts of the harassment a year after the harassment occurred. (*See* Doc. 76 at 7.) Plaintiff does not note in his amended complaint or response to Defendants' Motion any new harassment experienced within that year or any interventions or failures by Defendants related to student-on-student harassment. Plaintiff's decreased single-semester GPA for Fall 2019 is too attenuated from the alleged harassment for a reasonable jury to find in Plaintiff's favor. Plaintiff does not provide evidence to show he was deprived of tutoring or other educational opportunities

---

[6] Plaintiff states "his [GPA] *in the semester after he was excluded from the team* fell below 3.0 according to University records." (Doc. 76 at 7 (emphasis added).) Yet his own transcript belies this assertion because his GPA only fell below 3.0 in Fall 2019, and he was excluded from the team at the beginning of Fall 2018. (*See* Doc. 70-1 at 38.)

resulting in his decline in grades. Instead, the undisputed evidence shows Plaintiff achieved his highest GPA, a 3.8, the same semester he was removed from the team (Fall 2018), directly following the most severe harassment he alleges. (*See* Doc. 70-1 at 37–38.) Furthermore, Plaintiff achieved an even higher GPA, a 3.824, the semester after his removal from the team (Spring 2019). (*See id.* at 38.) Therefore, without more of a nexus, the Court finds Plaintiff fails to link his lower GPA in Fall of 2019 to any pervasive harassment. When two intervening semesters show Plaintiff's rising academic success, a reasonable jury could not find the decline in his Fall 2019 GPA was the result of severe and pervasive harassment he experienced nearly a year before.

Next, even if the Court ignored the critical deficiency in the link between Plaintiff's "decline" in grades and the alleged harassment, it is undisputed the University only formally "reduced" Plaintiff's financial aid after he transferred. (*See* Doc. 76 at 6–7.) Defendants contend Plaintiff "did not experience any decline in UA financial aid in connection with or after his removal from the team." (Doc. 69 at 11.) Regarding the Athletic Books Scholarship, Defendants provide an affidavit of the Executive Director of UA's Office of Scholarships and Financial Aid indicating Plaintiff was reimbursed throughout his sophomore year under his Athletic Books Scholarship and Plaintiff retained all academic scholarships, even after removal from the team. (Doc. 70-1 at 25.) For instance, on September 24, 2018, he received a $125.00 disbursement and on February 18, 2019, a $572.50 disbursement, both in the form of a credit for bookstore purchases. (*Id.*; Doc. 69 at 5; *see also* DSOF ¶ 14.) He also maintained his Wildcat Excellence Scholarship. (*See* Doc. 69 at 15.)

In his statement of facts, Plaintiff claims, without citing an admissible exhibit as required by the local rule, his "access to a Red and Blue Excellence Award was eliminated because educational requirements for that Scholarship are based on a 3.0 GPA for each semester and [his] grades fell below a 3.0 for the first[ ]time after his removal from the team." (PSOF at 3.) In his affidavit attached to his opposition to Defendants' Motion for Summary Judgment, Plaintiff states: "[M]y grades fell significantly, so I was no longer

able to access the Red and Blue scholarship, because I had severe emotional problems."
(Doc. 76-2 at 7.) Plaintiff cites Exhibit 4 in support of this assertion but Exhibit 4 contains
two copies of the first page of Plaintiff's transcript, which appears to be a mistake. (*Id.* at
16–17.) However, the Court believes Plaintiff attempts to refer to his 2.8 GPA for the Fall
of 2019, his final semester at UA, which is reflected on the second page of his transcript
contained within Defendants' exhibits. (*See* Doc. 70-1 at 38.) Plaintiff fails to establish a
causal link between his decline in grades and a decline in financial aid, let alone any decline
even tangentially related to harassment.[7] Rather, Plaintiff's only GPA below 3.0 was
rendered at the end of the Fall 2019 semester, months after he filed a notice of his intent to
attend another university.

Plaintiff emphasizes he was told his scholarship was cancelled upon his removal
from the team yet fails to connect one coach's comments with a decline in the quality of
his education related to the alleged harassment. Plaintiff states a coach told him "his
athletic scholarship was cancelled, effective immediately" on September 27, 2018. (*See*
Doc. 76-2 at 3; *see also* Doc. 76 at 6 n.1.) Plaintiff also mentions the same coach had
previously threatened to call the authorities "if [Plaintiff] ever dared to step foot in the
McKale Stadium." (Doc. 76-2 at 4 ¶ 23.) Plaintiff asserts this is why he could not deliver
his book receipts to the Compliance Office for reimbursement in person. (*Id.*) Yet, later
in his affidavit, Plaintiff admits he submitted receipts for reimbursement via mail in
January 2019 and received reimbursement checks even after allegedly being told his

---

[7] The Court will not entertain arguments about Plaintiff's loss of an academic
scholarship because Plaintiff's own evidence contradicts his assertions and logically makes
no sense. (*Compare* Doc. 77 at 3 (stating Plaintiff lost access to a "Red and Blue
Excellence Award" because it was based on a "3.0 GPA for each semester and Plaintiff's
grades fell below a 3.0 for the first[ ]time after his removal from the team"), *with* Doc. 76-
2 at 10 (noting student athletes are required to maintain a "*cumulative* Arizona [GPA] of
3.0" for academic scholarships (emphasis added)).)

In one part of his affidavit, Plaintiff appears to understand his Red and Blue
Excellence Award was only valid when he was an out-of-state student, (*see* Doc. 76-2 at 3
¶ 10), but he later states his "grades dropped precipitously which caused [him] to lose the
Red and Blue Excellence Award," (*id.* at 5 ¶ 32). However, the account statement he
attaches to his affidavit shows he received the Wildcat Excellence Award for the Fall 2019
semester. (*Id.* at 25.) The Court will not address all the contradictions in Plaintiff's briefing
and facts, but notes this appears to be an attempt to obfuscate the record so that the Court
finds in favor of Plaintiff based on "smoke and mirrors."

scholarship was cancelled.  (*Id.* at 4 ¶ 29.)  Therefore, Plaintiff does not show any deprivation of an educational opportunity because of one coach's September 2018 statement.  Plaintiff implies that UA intentionally failed to reimburse him for purchases made pursuant to his Athletic Books Scholarship or, at the very least, made it more difficult to do so because of this coach's statement.  Yet Plaintiff has not proffered evidence to support this implication, and all the evidence points to the contrary.

While there appears to be a factual "dispute" over the nature of a $372.47 check Plaintiff received, this is not a genuine issue of material fact because Plaintiff has flip flopped his position.  Defendants assert this check was reimbursement for books and materials under Plaintiff's Athletic Books Scholarship and provide evidence supporting their position.  (DSOF ¶ 20.)  In Plaintiff's responses to Defendants' requests for admissions, dated May 20, 2024, Plaintiff indicates he was reimbursed $372.47 for book purchases in the Fall 2019 semester, albeit much later than he expected to be reimbursed and despite his belief his Athletic Books Scholarship was not in effect.  (*See* Doc. 70-1 at 7–9.)  Less than three months later, however, Plaintiff flips the script in his response to Defendants' Motion for Summary Judgment.  He asserts "this reimbursement was for his meal ticket purchase in his freshman year which had not been properly refunded before." (*See* Doc. 76 at 7.)  Once again, Plaintiff fails to support this self-serving statement in his affidavit with any objective evidence.

What is most concerning to the Court, however, is this newly invented factual dispute likely constitutes a discovery violation.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to [supplement its response to a request for admission], the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.").  Even aside from Plaintiff's probable discovery violation, for which the Court would likely issue a preclusion sanction, any theory of educational deprivation based on UA's failure to immediately issue this $372.47 check logically falls apart.  Plaintiff purchased these books on September 25, 2019, and the charge posted to his account on September 30, 2019.  (*See* Doc. 70-1 at 30.)  The bill for this charge was due

1   on October 28, 2019, (*see id.*), yet Plaintiff filed his notice of intent to transfer on October

2   4, 2019, (DSOF ¶ 19), weeks before this bill was due.  Plaintiff seems to assert he was

3   "forced to transfer" due to scholarship losses but points to no facts supporting this

4   conclusion.  Critically, he fails to connect any educational deprivation related to this

5   reimbursement to harassment rather than merely abnormal account processing.

6        Additionally, while Plaintiff attempts to assert additional book purchases went

7   unreimbursed aside from those related to the $372.47 charge on his account, he does not

8   assert he sought reimbursement for these books, a required prerequisite for obtaining

9   reimbursement under the scholarship for purchases outside of the bookstore.  Therefore,

10  Plaintiff fails to show the link between those allegedly unreimbursed books and the alleged

11  discrimination.  Plaintiff also failed to support his assertion with *admissible* evidence.

12  Plaintiff appears to have committed yet another discovery violation because the documents

13  he now offers to support additional book purchases that went unreimbursed appear not to

14  have been disclosed during discovery, (*see* Doc. 80 at 9 n.5), and would therefore be

15  inadmissible at summary judgment, *see* Fed. R. Civ. P. 37(c)(1).

16  **IV.   Conclusion**

17       Accordingly, the Court grants summary judgment to Defendants because they have

18  shown there is no genuine dispute as to any material fact and they are entitled to judgment

19  as a matter of law.

20       **IT IS ORDERED** the Motion (Doc. 69) is **GRANTED**.  Plaintiff's discrimination

21  claim is **DISMISSED with prejudice**.

22       **IT IS FURTHER ORDERED** Defendants' Motion for Summary Disposition

23  (Doc.73) is **DISMISSED as moot**.

24       Dated this 28th day of March, 2025.

25

26

27                                          Honorable Scott H. Rash
                                            United States District Judge
28